# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-0442V
### PUBLISHED

| | |
|---|---|
| TIFFANY DAGEN,<br><br>           Petitioner,<br>v.<br><br>SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br><br>           Respondent. | Chief Special Master Corcoran<br><br>Filed: November 6, 2019<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Tetanus Diphtheria acellular<br>Pertussis (Tdap) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On March 26, 2018, Tiffany Dagen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa–10, *et seq*.[2] (the "Vaccine Act" or "Program"), alleging that as a result of receiving both an influenza ("flu") vaccine and a tetanus diphtheria acellular pertussis ("Tdap") vaccine to her left shoulder on February 1, 2017, she suffered a shoulder injury related to vaccine administration ("SIRVA"). Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] I intend to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Because this published decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

For the reasons discussed below, I find that Petitioner is entitled to compensation in the amount of $67,080.14.

## I.     Relevant Procedural History[3]

Ms. Dagen filed her petition for compensation on March 26, 2018, with seven medical record exhibits, alleging that the injuries she received to her left shoulder were caused by a flu vaccine and Tdap vaccine she received on February 1, 2017. Petition at 1. (ECF No. 1). Additional medical records and a Statement of Completion were filed on March 28, 2018. (ECF Nos. 6-7).

On February 15, 2019, Respondent filed a status report stating that the records had been reviewed and that Respondent found the case appropriate for settlement discussions. Respondent invited Petitioner to send a settlement demand. (ECF No. 15). Over the next three months, the parties attempted to resolve this case through informal settlement discussions. On September 8, 2017, Petitioner filed a status report stating that the parties were at an impasse. (ECF No. 20). To evaluate the issues in the case, Respondent was ordered to file his report pursuant to Vaccine Rule 4(c). (ECF No. 21).

On April 1, 2019, Respondent filed his Rule 4(c) report conceding that Petitioner was entitled to compensation. (ECF No. 23). On April 2, 2019, Petitioner filed a status report stating that the parties "agreed as to the amount that Petitioner is entitled to for reimbursement of out of pocket medical expenses, but disagree on the amount for pain and suffering and lost wages," and proposed a schedule for filing damages briefs. (ECF No. 26). On April 3, 2019, a scheduling order was issued setting a schedule for the parties to file briefs on damages. (ECF No. 27). The parties have filed their respective briefs and this case is now ripe for a determination regarding an award of damages.

## II.    Relevant Medical History

### a.  Medical Records

At the time of the February 1, 2017 vaccinations at issue in this case, Ms. Dagen (age 44) was married with one young son and employed as a salaried remote employee. Petitioner's Exhibit ("Pet. Ex.") 12 at 1. Ms. Dagen's medical history mentions a history of bilateral shoulder pain, neck pain, and headaches. Pet. Ex. 2 at 1-5. Diagnostic tests approximately one year prior to the vaccinations at issue in this case show mild to moderate cervical degenerative changes. *Id*. She was treated with steroids and

---

[3] The comprehensive procedural history set forth in the Findings of Fact and Ruling on Entitlement issued on August 3, 2018 is adopted into this decision as has occurred in other similarly situated cases. *Dagen v. Sec'y of Health & Human Servs.*, No. 18-442V, 2019 WL 2296484, at *1-3 (Fed. Cl. Spec. Mstr. April 1, 2019); s*ee also e.g., Capasso v. Sec'y of Health & Human Servs.*, No. 17-0014V, 2018 WL 5077781, at *1-2 (Fed. Cl. Spec. Mstr. Aug. 3, 2018).

Diclofenac. *Id*. Her medical history does not otherwise mention any history of shoulder injuries and does not otherwise appear to be contributory to her claim in this case.[4]

On February 1, 2017, Ms. Dagen received the flu and Tdap vaccinations to her left shoulder. Pet. Ex. 1 at 3; Pet. Ex. 9 at 2. On the Patient Immunization form, there is a notation at the bottom of the page that reads, "P[atien]t called and she had TB [sic] shot and Flu shot on her right[sic][5] arm, she had this done 2 weeks ago and her arm is still really swollen. She was wondering if she should give it a little more time or should she make an app[ointment]t." *Id*.

On February 16, 2017, Ms. Dagen presented to Certified Nurse Practitioner, Tracee Matincheck, for complaints of left shoulder pain. Pet. Ex. 6 at 3. She described her shoulder pain as a moderately painful aching feeling. *Id*. Ms. Dagen reported only mild relief with Ibuprofen. *Id*. On examination, Ms. Dagen exhibited extremity pain, decreased range of motion of the left shoulder due to pain in the deltoid, and tenderness. *Id*. at 4. In the assessment, it was documented "[p]ossible injection site reaction vs. Muscle pain[.] Prednisone x 2 week taper to reduce inflammation to see if there is improvement." *Id*. Ms. Dagen was instructed to return if her pain did not improve. *Id.*

On March 15, 2017, Ms. Dagen presented to Dr. Michael Yurkewicz at Pinnacle Health Bone & Joint Center for complaints of continued left shoulder pain. Pet. Ex. 3 at 3. She reported that since receiving the Tdap and flu vaccines on February 1, 2017, she "has had issues with movement of her left arm." *Id*. Dr. Yurkewicz's note states "[o]n the evening of the vaccines she was sore, but could not move her arm. She notes that it was going on for 2 weeks before she tried the Prednisone. Admits to pain and swelling…" *Id*. At the time of this examination, Ms. Dagen stated that her range of motion had improved, but the pain in her left shoulder worsened whenever she tried to reach above her head or behind her back. *Id*. She had difficulty sleeping on her left side and admitted that the pain seemed to be getting progressively worse. *Id*. On examination, Ms. Dagen exhibited decreased range of motion and tenderness of the left shoulder. *Id*. at 4. She tested positive for a number of special shoulder impingement tests including Hawkins, Empty Can, Speeds, Yergasons, and Obriens. *Id*. Ms. Dagen was assessed with left shoulder tendonitis and referred to physical therapy. *Id*. Dr. Yurkewicz wrote

> [g]iven her [history] of the vaccines and timing of pain, likely is SIRVA, discus[s]ed with patient that this is rare, but will heal and resolve with time. Basically the inflammation [o]f the bodies response to the proteins from the vaccine, causing a chemical tendonitis.

---

[4] In Respondent's Rule 4(c) report, Respondent concedes that "petitioner had no history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection…" Respondent's Report at 3. (ECF No. 23).

[5] The parties do not contest, and the vaccination record shows, that petitioner received both the flu vaccine and Tdap vaccination to her left arm on February 1, 2017. *See* Pet. Ex. 1 at 3; Respondent's Rule 4(c) report at 1. (ECF No. 23).

*Id*. at 3.  Ms. Dagen agreed to try conservative treatment including physical therapy and over-the-counter pain relievers and was instructed to follow up in four weeks.  *Id*. at 5.  The x-ray report from this examination demonstrated no acute fracture or dislocation.  *Id*. at 3.  No significant arthritis was seen, although mild impingement was noted with spurring of the acromion.  *Id*.

On March 22, 2017, Ms. Dagen underwent an initial physical therapy evaluation at the Hetrick Center.  Pet. Ex. 4 at 3.  She reported that her left shoulder pain "began after a flu shot given to her on 2/1/17.  She states that after 2 weeks she was having significant pain and returned to her physician."  *Id*.  Ms. Dagen rated her pain as a 4 at best and 9 at its worst on a pain scale from 1 to 10.  On examination, it was noted

> Flexibility – severely limited throughout the pectoral and bicep musculature[.] Joint Mobility – moderately hypomobile in the glenohumeral joint[.] Additional Findings – the patient has nearly normal PROM throughout the left glenohumeral joint and no capsular pattern appreciated.  She has a painful arc present at mid-range shoulder elevation and severe pain during AROM in the left shoulder.  Therefore, in my opinion, her pain is likely originating from a tendinitis/bursitis issue in her shoulder rather than an adhesive capsulitis issue.

*Id*. at 3.  The Crossover, Speed's Test, Neer Impingement Test, and Kennedy Hawkins tests were all positive for abnormalities.  *Id*. at 4.  The clinical assessment included lesion, bursitis and pain of the left shoulder.  *Id*. at 5.  Ms. Dagen's prognosis was rated as "good" but the evaluation concluded that physical therapy was necessary.  *Id*.  Six to eight weeks of 2-3 sessions per week was recommended.  *Id*. at 6.

On April 3, 2017, Ms. Dagen returned to Pinnacle Health and was seen by Dr. Robert Holzshu.  Pet. Ex. 3 at 7.  She reported that she had been attending physical therapy, but that her left shoulder pain felt worse than before.  *Id*.  She also felt that her range of motion remained limited.  *Id.*  Ms. Dagen stated that she had been taking her anti-inflammatories and completed a Prednisone taper, both of which did not improve her symptoms.  *Id*.  She complained of trouble sleeping, driving, and typing on a computer.  *Id*.  On examination, Ms. Dagen continued to demonstrate a decreased range of motion of the left shoulder, tenderness, pain, and decreased strength.  *Id*.  Dr. Holzshu noted that Ms. Dagen had failed conservative treatment and he ordered an MRI observing that Ms. Dagen was developing adhesive capsulitis and suspecting a possible partial rotator cuff tear.  *Id*. at 8.

On April 6, 2017, Ms. Dagen underwent an MRI of her left shoulder.  Pet. Ex. 3 at 19-20.  There was no evidence of a complete or partial rotator cuff tear.  *Id*. at 20.  There was some indication of minor bursitis and mild degenerative changes of the AC joint.  *Id*.

On April 12, 2017, Ms. Dagen returned to Pinnacle Health to review the results of her MRI with Dr. Yurkewicz.  Pet. Ex. 3 at 12.  Dr. Yurkewicz noted that there were no tears seen on the MRI, but it confirmed bursitis and mild tendonitis about the supraspinatus tendon.  *Id*.  He stated that no surgery was needed.  *Id*. at 12.  On examination, Ms. Dagen continued to demonstrate a decreased range of motion of the

4

left shoulder and tenderness. *Id*. She received a steroid injection and was instructed to continue with physical therapy and to use oral NSAIDs when necessary. *Id.* at 13.

At her April 17, 2017 physical therapy session, Ms. Dagen reported that her shoulder "has felt a little better since the injection she received last week." Pet. Ex. 4 at 14. However, by April 19, 2017, she reported still experiencing pain with reaching overhead. *Id*. at 16. By April 27, 2017, at her reevaluation, she reported a 20% improvement since beginning physical therapy. *Id*. at 20. Ms. Dagen continued to experience a lot of pain and swelling when lifting her left arm from mid-range and higher. *Id*. She requested time to rest her shoulder and to follow up with her physician. *Id*.

Nearly two months later, on June 7, 2017, Ms. Dagen returned to Pinnacle Health. Pet. Ex. 3 at 15. She reported that the steroid injection only relieved her pain for approximately four days, but that physical therapy was going well and improved her range of motion, strength, and pain levels. *Id*. Ms. Dagen stated that her pain was worse with overhead movement which was demonstrated when she recently attempted to swim. *Id*. On examination, she exhibited normal range of motion of the left shoulder although she continued to experience tenderness, pain and decreased strength. *Id*. Ms. Dagen was given another referral to continue with her physical therapy and to follow up in one month. *Id*. at 16-17.

On June 28, 2017, Ms. Dagen began attending physical therapy at Select Physical Therapy. Pet. Ex. 5 at 1. At the initial evaluation, she rated her pain severity at a 2 at best and a 10 at worst. *Id*. The mechanism of injury was listed as "Post Injection syndrome". *Id*. At this evaluation, Ms. Dagen demonstrated symptoms consistent with subacromial bursitis and tendinitis of the rotator cuff. *Id*. at 2. It was recommended that she attend rehabilitative therapy for three visits a week with an expected duration of 12 weeks. *Id*.

Ms. Dagen attended nine physical therapy sessions on July 3, 6, 11, 17, 20, 25, 31, August 3, 7, 2017. Pet. Ex. 5. The August 7, 2017 physical therapy notes state that "[t]he patient is discontinuing therapy due to insurance visit limitations." *Id*. at 34.

On August 9, 2017, Ms. Dagen returned to Dr. Yurkewicz. Pet. Ex. 7 at 2. She reported that physical therapy had improved her symptoms, and she now rated an 80% overall improvement. *Id.* However, Ms. Dagen still complained of lateral shoulder pain with certain overhead movements or when "lifting too heavy," but she stated that she no longer needed pain medication. *Id*. She also reported mild weakness at times but stated that she was also improved with her strength. *Id*. On examination, Ms. Dagen had full range of motion of the left shoulder and her strength was intact. The special impingement tests were all negative. *Id*. at 3. In the assessment, it was noted that Ms. Dagen was pleased with her progress. Dr. Yurkewicz encouraged Ms. Dagen to continue with her home exercise program and instructed her on keeping a correct posture. She was told to follow up as needed as she had been discharged from physical therapy. *Id*.

### III. Affidavit Testimony

Ms. Dagen has stated that on the evening she received the two vaccinations in her left arm (February 1, 2017), her pain level was at a 10, the worst on a scale from one to 10. Pet. Ex. 12 at 1. She stated that she was unable to raise her arm for over a month, making it difficult to get dressed, drive to work and sleep throughout the night. *Id*. For six months thereafter, she continued to experience pain in her left shoulder as well as limited motion and had difficulty with every day activities. *Id*. She described how she was unable to enjoy activities such as swimming and playing tennis during a long-anticipated vacation to Puerto Rico in late February 2017. *Id*. Likewise, she was unable to enjoy a trip to Panama City Beach, Florida, in late May 2017 because of her shoulder pain. *Id.* Ms. Dagen stated that she has a school-aged son and she was unable to play basketball with him, pick him up, or engage in other typical activities because of her shoulder pain. *Id*. at 2. And although her pain has subsided since her injury, she states that she is "still not 100% back to normal." *Id*.

### IV. The Parties' Arguments

Ms. Dagen seeks an award in the total amount of $82,080.14, consisting of $80,000.00 as compensation for her pain and suffering, plus $2,080.14 for past unreimbursable medical expenses. Petitioner's Brief in Support of Damages ("Pet. Brief") at 1 (ECF No. 30). In her brief and affidavit, Petitioner stresses the degree to which her injury impacted her life beyond what is, or would be, reflected in her medical records. (ECF No. 28); Pet. Ex. 12.

Respondent argues that Petitioner should be awarded $57,500.00 as compensation for her actual pain and suffering, plus the $2,080.14, in unreimbursable expenses to which the parties have agreed. Respondent's Brief on Damages ("Res. Brief") at 1 (ECF No. 32). He maintains that Petitioner was prescribed one course of Prednisone, two courses of physical therapy, and received one steroid injection. *Id.* at 11. He argues that at "six months post-vaccination, she was 80% improved, no longer needed pain medication, and had a normal range of motion." *Id*. In sum, Respondent argues that Petitioner's contemporaneous records demonstrate her clinical course did not necessitate consistent, ongoing treatment after six months, nor did she have ongoing pain that would warrant a pain and suffering award on the higher end of the statutory range. *Id*.

Comparing Petitioner's facts to those in two comparable cases,[6] Respondent asserts that the Petitioner in this case should receive a similar award given her treatment course and the severity of her injury. Res. Brief at 12.

---

[6] *Kim v. Sec'y Health & Human Servs.*, No. 17-418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses); *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses).

### V.      Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 15(a)(4).  Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary."  § 15(a)(1)(B).  Petitioner bears the burden of proof with respect to each element of compensation requested.  *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress.  *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation").  Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.  *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case.  *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case.").  And, of course, a special master may rely on his or her own experience adjudicating similar claims.  *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).  Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum.  *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

In *Graves*, Judge Merrow rejected the special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap, criticizing this as constituting "the forcing of all suffering awards into a global comparative scale in which the individual Petitioner's suffering is compared to the most extreme cases and reduced accordingly."  *Graves*, 109 Fed. Cl. at 590.  Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program, applying the statutory cap only thereafter.  *Id*. at 595.

## VI.    Prior SIRVA Compensation

### A. History of SIRVA Settlement and Proffer

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2019, 1,170 SIRVA cases have informally resolved[7] within the SPU since its inception in July of 2014. Of those cases, 689 resolved via the government's proffer on award of compensation, following a prior ruling that petitioner is entitled to compensation.[8] Additionally, 462 SPU SIRVA cases resolved via stipulated agreement of the parties without a prior ruling on entitlement.

Among the SPU SIRVA cases resolved via government proffer, awards have typically ranged from $75,325.00 to $124,442.25,[9] with a median award of $96,223.27. Formerly, these awards were presented by the parties as a total agreed-upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering. Since late 2017, Respondent's proffer has included subtotals for each type of compensation awarded.

Among SPU SIRVA cases resolved via stipulation, awards have typically ranged from $50,000.00 to $95,000.00,[10] with a median award of $70,000.00. In most instances, the parties continue to present the stipulated award as a total agreed-upon dollar figure, without separately listed amounts for expenses, lost wages, or pain and suffering. Unlike the proffered awards, which purportedly represent full compensation for all of petitioner's damages, stipulated awards also typically represent some degree of litigative risk negotiated by the parties.

---

[7] Additionally, 36 claims alleging SIRVA have been dismissed within the SPU.

[8] Additionally, there have been 19 prior cases in which petitioner was found to be entitled to compensation, but where damages were resolved via a stipulated agreement by the parties rather than government proffer.

[9] Typical range refers to cases between the first and third quartiles. Additional outlier awards also exist. The full range of awards spans from $25,000.00 to $1,845,047.00. Among the 19 SPU SIRVA cases resolved via stipulation following a finding of entitlement, awards range from $45,000.00 to $1,500,000.00 with a median award of $115,772.83. For these awards, the first and third quartiles range from $90,000.00 to $160,502.39.

[10] Typical range refers to cases within the second and third quartiles. Additional outlier awards also exist. The full range of awards spans from $5,000.00 to $509,552.31. Additionally, two stipulated awards were limited to annuities, the exact amounts of which were not determined at the time of judgment.

### B. Prior Decisions Addressing SIRVA Damages

In addition to the extensive history of informal resolution, there have been 19 reasoned decisions as of the end of May of 2019 addressing the appropriate amount of compensation in SPU SIRVA cases.[11]

#### i. Below-median awards limited to past pain and suffering

In eleven prior SPU cases, compensation has been awarded for pain and suffering limited to compensation for actual or past pain and suffering that has fallen below the amount of the median proffer discussed above in a range of $60,000.00 to $90,000.00.[12] These cases have all included injuries with a "good" prognosis, albeit in some instances with some residual pain. All of these cases had only mild to moderate limitations in range of motion and MRI imaging likewise showed only evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. The duration of injury ranged from six to 29 months and, on average, these petitioners experienced approximately fourteen months of pain. *Id*.

Significant pain was reported by petitioners in these cases for up to eight months post-vaccination. However, in approximately half of the cases, these petitioners subjectively rated their pain as six or below on a ten-point scale. Petitioners who reported

---

[11] An additional case, *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, was removed from the SPU due to the protracted nature of the damages phase of that case. In that case, petitioner was awarded $100,000.00 in compensation for past pain and suffering and $2,293.15 for past unreimbursable expenses. *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 664495 (Fed. Cl. Spec. Mstr. Jan. 22, 2019). A separate reasoned ruling addressed the amount awarded. 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019).

[12] These cases are: *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses); *Garrett v. Sec'y of Health & Human Servs.*, No. 18-0490V, 2019 WL 2462953 (Fed. Cl. Spec. Mstr. Apr. 8, 2019) (awarding $70,000.00 for actual pain and suffering); *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering); *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses); *Kim v. Sec'y of Health & Human Servs.*, No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses); *Pruett v. Sec'y of Health & Human Servs.*, No. 17-0561V, 2019 WL 3297083 (Fed. Cl. Spec. Mstr. Apr. 30, 2019) (awarding $75,000.00 for actual pain and suffering and $944.63 for actual unreimbursable expenses); *Attig v. Sec'y of Health & Human Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering and $1,386.97 in unreimbursable medical expenses); *Desrosiers v. Sec'y of Health & Human Servs.*, No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 in past unreimbursable medical expenses); *Weber v. Sec'y of Health & Human Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for actual pain and suffering and $1,027.83 for actual unreimbursable expenses); *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for pain and suffering and $1,784.56 in unreimbursable medical expenses); *Bruegging v. Sec'y of Health & Human Servs.*, No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019) (awarding $90,000.00 for actual pain and suffering and $1,163.89 for actual unreimbursable expenses).

pain in the upper end of the ten-point scale generally suffered pain at this level for the shorter time period of three months or less. Approximately one-half were administered one to two cortisone injections. Most of these petitioners pursued physical therapy ("PT") for two months or less and none had any surgery. Two petitioners attended PT for five and four months respectively, but most of the PT in one of these cases focused on conditions unrelated to the Petitioner's SIRVA.[13] Several of these cases included a delay in seeking treatment. These delays ranged from about 42 days to over six months.[14]

### ii. Above-median awards limited to past pain and suffering

Only in five prior SPU cases has awarded compensation for past pain and suffering been above the median proffered SIRVA award, ranging from $110,000.00 to $160,000.00.[15] Like those in the preceding group, prognosis was "good." However, as compared to those petitioners receiving a below-median award, these cases were characterized either by a longer duration of injury or by the need for surgical repair. Four out of five underwent some form of shoulder surgery while the fifth experienced two full years of pain and suffering, eight months of which were considered significant, while seeking extended conservative treatment. On the whole, MRI imaging in these cases also showed more significant findings. In four out of five cases, MRI imaging showed possible evidence of partial tearing.[16]

---

[13] *Weber v. Sec'y of Health & Human Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for actual pain and suffering and $1,027.83 for actual unreimbursable expenses); *Garrett v. Sec'y of Health & Human Servs.*, No. 18-0490V, 2019 WL 2462953 (Fed. Cl. Spec. Mstr. Apr. 8, 2019) (awarding $70,000.00 for actual pain and suffering).

[14] *Marino*, 2018 WL 2224736 (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses); *Kim*, 2018 WL 3991022 (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses).

[15] These cases are: *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $3,642.33 in unreimbursable medical expenses); *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $305.07 in unreimbursable medical expenses); *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 in unreimbursable medical expenses); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 in unreimbursable medical expenses); *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering and $4,931.06 in unreimbursable medical expenses).

[16] In *Reed*, MRI showed edema in the infraspintaus tendon of the right shoulder with a possible tendon tear and a small bone bruise of the posterior humeral head. In *Dobbins*, MRI showed a full-thickness partial tear of the supraspinatus tendon extending to the bursal surface, bursal surface fraying and partial thickness tear of the tendon, tear of the posterior aspects of the inferior glenohumeral ligament, and moderate sized joint effusion with synovitis and possible small loose bodies. In *Collado*, MRI showed a partial bursal surface tear of the infraspinatus and of the supraspinatus. In *Knudson*, MRI showed mild longitudinally oriented partial-thickness tear of the infraspinatus tendon, mild supraspinatus and infraspinatus tendinopathy, small subcortical cysts and mild subcortical bone marrow edema over the posterior-superior-

During treatment, each of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and all experienced moderate to severe limitations in range of motion. Moreover, these petitioners tended to seek treatment of their injuries more immediately. Time to first treatment ranged from five days to 43 days. Duration of physical therapy ranged from one to 24 months and three out of the five had cortisone injections.

### iii. Awards including compensation for both past and future pain and suffering

Three prior SPU SIRVA cases feature compensation for both past and future pain and suffering.[17] In two, petitioners experienced moderate to severe limitations in range of motion and moderate to severe pain. One petitioner underwent surgery, while another was deemed not a candidate for surgery following an arthrogram. Despite significant physical therapy, medical opinion indicated that their disability would be permanent. In these two cases, petitioners were awarded above-median awards for actual pain and suffering as well as awards for projected pain and suffering for the duration of their life expectancies. In the third case, petitioner's injury was less severe, but the petitioner had been actively treating just prior to the case becoming ripe for decision, and her medical records reflected that she was still symptomatic despite a good prognosis. A below-median amount was awarded for actual pain and suffering, but, in light of the facts and circumstances of the case, petitioner was also awarded projected pain and suffering.

## VII. Appropriate Compensation in this SIRVA Case

Awareness of suffering is not typically a disputed issue in cases involving SIRVA. In this case, neither party has raised (nor am I aware of any issue concerning) Petitioner's awareness of suffering, and I find that this matter is not in dispute. Thus, based on the circumstances of this case, I find that Petitioner had full awareness of her suffering, and proceed to analyze the severity and duration of the injury.

---

lateral aspect of the humeral head adjacent to the infraspinatus tendon insertion site, and minimal subacromial-subdeltoid bursitis.

[17] These cases are: *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering, $10,000.00 for projected pain and suffering for one year, and $862.15 in past unreimbursable medical expenses); *Binette v. Sec'y of Health & Human Servs.*, No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $130,000.00 for actual pain and suffering, $1,000.00 per year for a life expectancy of 57 years for projected pain and suffering, and $7,101.98 for past unreimbursable medical expenses); and *Hooper v. Sec'y of Health & Human Servs.*, No. 17-0012V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019) (awarding $185,000.00 for actual pain and suffering, $1,500.00 per year for a life expectancy of 30 years for projected pain and suffering, $37,921.48 for lost wages).

### a. Severity of Pain and Suffering

With respect to the severity of the injury, Ms. Dagen's medical records and her affidavit provide a description of the pain she experienced throughout the duration of her injury. Pet. Ex. 10. On the day of vaccination, Ms. Dagen described her shoulder pain at its worst, a 10 on a scale of one to 10. Pet. Ex. 10 at 1. She explained that she was unable to raise her arm for over a month, making it difficult to drive, get dressed, and sleep throughout the night. *Id*.

Just two weeks after receiving the vaccinations, Ms. Dagen called her physician to report the ongoing shoulder pain she was experiencing. She continued to report shoulder pain even after taking Prednisone and anti-inflammatory medications. One month and a half later, she was evaluated by an orthopedist who noted that Ms. Dagen complained of worsening pain and had abnormal results on a range of shoulder impingement tests. One month later, after attending several physical therapy sessions, Ms. Dagen described her pain as "worse than before" and was not relieved by anti-inflammatories and a Prednisone taper. She received a steroid injection in April 2017 which only relieved her pain for four days. However, by June 2017, Ms. Dagen reported that her pain levels, strength and range of motion were improving. By August 2017, with physical therapy and conservative treatment, Ms. Dagen reported an 80% overall improvement.

### b. Duration of Pain and Suffering

In this case, Petitioner's injury is less severe and of a shorter duration than those injuries which have warranted higher awards for pain and suffering. Indeed, Petitioner's medical history closely aligns with those SIRVA cases described above which have received below-median awards.

The above-described course is very similar to the petitioners in those cases featuring damages *below* median award for proffered SIRVA cases, where petitioners experienced from seven to 15 total months of pain and suffering. *See, e.g., Kim,* 2018 WL 3991022; *Attig,* 2019 WL 1749405; *Marino*, 2018 WL 2224736. Petitioners in two of these very comparable cases reported only one to three months of significant pain and all three cases included MRI findings consistent with a milder type injury, but received no more than $75,000.

Accordingly, the medical record in this case supports the overall conclusion that Petitioner's pain was fairly significant in the first two months post-vaccination, but progressively eased in the ensuing period, with her movement impairment also largely (though not totally) improved within seven months of vaccination.

In light of all of the above, and based on the record as a whole, I find that **$65,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c. Award for Past Unreimbursed Expenses

Ms. Dagen requests $2,080.14 in past unreimbursable expenses. Pet. Brief at 1; Pet. Ex. 6. Respondent agrees to this amount.[18] Pet. Brief at 1. Thus, Petitioner is awarded $2,080.14 for her past unreimbursable expenses.

### VIII. Conclusion

In light of all of the above, the I award **Petitioner a lump sum payment of $67,080.14,** (representing $65,000.00 for Petitioner's actual pain and suffering and $2,080.14 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Tiffany Dagen.** This amount represents compensation for all damages that would be available under 42 U.S.C. § 300aa-15(a). *Id*.

The clerk of the court is directed to enter judgment in accordance with this decision.[19]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[18] In his brief, Respondent states that he does not dispute Petitioner's claim for her Medicaid lien. Res. Brief at 12. Since Petitioner has stated that there is no Medicaid lien in this case, I assume that Respondent means that he does not dispute Petitioner's request for her unreimbursable medical expenses as has been represented by Petitioner.

[19] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.